**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**


TYRONE WILLIAMS
ADC # 1018993                                                                    PLAINTIFF


V.                                        5:07CV00012 SWW/HDY


SCOTT *et al.*                                                              DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommendation has been sent to United States District Court Judge Susan

Webber Wright. Any party may serve and file written objections to this recommendation.  Objections

should be specific and should include the factual or legal basis for the objection.  If the objection is

to a factual finding, specifically identify that finding and the evidence that supports your objection.

An original and one copy of your objections must be received in the office of the United States

District Court Clerk no later than eleven (11) days from the date of the findings and

recommendations.  The copy will be furnished to the opposing party.   Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.        Why the evidence proffered at the hearing before the District
          Judge  (if such a  hearing is granted)  was not  offered at  the

hearing before the Magistrate Judge.

3.       The detail of any testimony desired to be introduced at the
         hearing before the District Judge in the form of an offer of
         proof,  and a copy,  or the original, of any documentary or
         other non-testimonial evidence desired to be introduced at
         the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary

hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## **DISPOSITION**

A pre-jury evidentiary hearing was held on November 27, 2007, in this matter, and Plaintiff

presented evidence in support of his allegations, to determine whether this case should proceed to

a jury trial before the Honorable Susan Webber Wright, United States District Judge.  Pursuant to

the standard set forth in *Johnson v. Bi-State Justice Center*, 12 F. 3d 1133 (8th Cir. 1993), the Court

has considered Plaintiff's testimony during the hearing to be true, drawn appropriate inferences in

Plaintiff's favor, and refrained from making any credibility determinations. *Id*. at 1135-36. Viewing

the evidence presented during the hearing in this light, the Court must now decide "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law." *Id*., *quoting Anderson v. Liberty Lobby, Inc.*,

477 U.S. 251-2 (1986).  Based upon the evidence introduced at the Evidentiary Hearing, the

undersigned makes the following recommendation with regard to findings and disposition:

## Analysis

Plaintiff has been in the custody of the Arkansas Department of Correction for approximately fifteen years; he is currently housed at the Tucker Max Unit and it is here that the events giving rise to this litigation occurred.  Plaintiff was first diagnosed with a hernia upon his arrival at the Diagnostic Unit in 1993.   From there he was placed at the Varner Unit and spent about two weeks on the field utility, or "hoe squad," before his hernia diagnosis caused him to be assigned an M-3 medical classification for inside work.

In 1995 he was transferred to Tucker Max, where he spent his first two years in administrative segregation, then was given kitchen and library jobs.  Once again, however, he ended up in administrative segregation.  When he was released from administrative segregation in 2000, the warden, not a named defendant, observed that Plaintiff was "too young and healthy" for an M-3 classification.   Shortly thereafter, Defendant Linda Cabine, a physician's assistant, re-examined Plaintiff and assigned an M-2 classification, which imposed only a forty-pound lifting restriction.[1] This allowed him to be assigned again to field utility duty, but Plaintiff said that he has not been assigned to field utility since his release from administrative segregation in 2004.  Plaintiff says that his hernia now pops out, protruding  "past the skin," while the "pain gets worse and worse."  Plaintiff seeks surgical repair for his condition.

### A.  Deliberate Indifference Claims

At the hearing, Plaintiff acknowledged that Defendants Miles, Pfeiffer, Wilson, and Bearden, who are administrative employees of Correctional Medical Services and do not possess medical

---

[1]  The Court notes that, even had the remainder of Plaintiff's claims shown sufficient factual disagreement to require submission to a jury, his claims against Defendant Cabine, who has not yet been successfully served with notice of the suit against her, are outside the statute of limitations.

training nor any authority for treatment decisions, could not be held liable in this § 1983 action for deliberate indifference.  During the course of cross-examination, the same became apparent as to Defendants Culpepper, Shell, and Green.

At his deposition, and at the hearing, Plaintiff testified that he did not actually remember having been treated by Defendant Dr. Culpepper, and had no knowledge of what his involvement might have been in the allegations raised of deliberate indifference.  Similarly, Plaintiff's testimony failed to attribute any action or inaction to Defendant Dr. Yates.  Plaintiff also testified that while he named Defendant Green, the Health Services Administrator for Correctional Medical Services at the Tucker Unit, because she personally examined Plaintiff and saw the condition of his hernia, she is not herself a physician and has no authority to overrule a doctor's treatment decision or actually make a decision regarding the necessity of surgery.  The same is true for Defendant Shell, the medical grievance officer, who, though a nurse who apparently told Plaintiff he did not need surgery for his hernia, is also without the authority to either approve or override treatment determinations of the Correctional Medical Service physicians.

The physicians who actually treated Plaintiff that were named as Defendants were Doctors Scott and Bowler. Defendant Dr. Bowler first came to the Tucker Unit in 2005, and first examined Plaintiff on July 11, 2005.  He diagnosed a "right inguinal hernia," that Plaintiff had had for approximately fifteen years, which had worsened in 2000.  At that time, Dr. Bowler wrote in his notes that he would "refer for surgical correction."  *See* Defendant's Exhibit 1, p. 1. A consultation request was prepared by Dr. Bowler that same day.  The surgical consult was conducted by Dr. Scott, who examined Plaintiff on August 12, 2005.  He described Plaintiff's condition as a "freely reducible" hernia controlled by "truss, no further measure necessary." Defendant's Exhibit 3, p.1.

Dr. Bowler examined Plaintiff again on September 20, 2005 for his hernia, and prescribed

Tylenol 3 for his occasional pain.  Plaintiff saw Dr. Bowler again on October 20, 2005, as part of a chronic care visit associated with his hernia condition, and the progress notes show "no new indication for surgical repair."   Another follow-up was conducted on December 22, 2005, but revealed no changes in his condition.  *See* Defendant's Exhibit 1, p. 5.

Again on February 7, 2006, Plaintiff's hernia was described as "fully reducible," but he was still referred for a second surgical consult with Dr. Scott.  *See* Defendant's Exhibit 1, p. 6.  Dr. Scott's report, dated March 21, 2006, again notes that surgery is not necessary at this time. *See* Defendant's Exhibit 3, p. 2.  Additional examinations of Plaintiff's condition in March and August of 2006 continued to find that his hernia was still "completely reducible," but another surgical consult with Dr. Scott was arranged for the end of 2006.  Again, he found that surgery was not necessary, but recommended a follow-up in six months.  *See* Defendant's Exhibit 3, p. 3.

Clearly from the testimony presented it appears that Dr. Scott alone was responsible for the decision not to order surgery for Plaintiff's hernia; furthermore, it appears that this decision was made based on numerous examinations of Plaintiff's condition.  These consultations, coupled with the testimony that during his incarceration Plaintiff has had at least three surgeries (one for his nose and two for stomach ailments) belie the assertion that Correctional Medical Services or its employees have routinely denied Plaintiff adequate medical care based solely on financial determinations. Accordingly, the undersigned recommends that Plaintiff's claims against these Defendants be dismissed.

### B.  Work Restriction Claims

Plaintiff has also alleged that the Arkansas Department of Correction Defendants, Warden David White, Assistant Warden Tommy James, Classification Officer Vanita King, Medical Investigator John Byus, Deputy Assistant Director Larry May, former Deputy Assistant Director Max

Mobley, Deputy Assistant Director Wendy Kelly, and Director Larry Norris have required him to work beyond his physical limitations by placing him on the field utility squad in spite of his hernia.

The testimony presented at the hearing revealed that medical professionals employed by Correctional Medical Services are responsible for assigning the classification status to inmates that determines their job placement.  In this case, Plaintiff was at one time re-classified, apparently by Defendant Cabine, to M-2, which did qualify him for work on the field utility squad.  This happened in the year 2000.  Sometime in 2004 Plaintiff was placed in administrative segregation again and was not eligible for prison employment.  He spent approximately two years in administrative segregation and was returned to the hoe squad in 2006, but his classification was changed in March of 2006 to M-3 by Dr. Ifediora, not a named Defendant nor any longer a CMS employee, after Plaintiff was hospitalized for his hernia. However, it does not appear that Plaintiff's assignment to the hoe squad was outside the classification assigned to him by the medical department at that time.  Plaintiff states that he has no complaints about his current job assignment.

Despite Plaintiff's contentions that these Arkansas Department of Correction Defendants had the authority either to direct CMS to provide him with surgery for his hernia, or to alter his job-assignment or classification based on their own observations of his physical condition, the responsibility for management of his medical condition rests with CMS and its employees, as discussed above.  Although Plaintiff states that he disagrees with the responses of Defendants Mobley and Kelly to his grievances filed on these issues, this does not give rise to a constitutional violation.  It is well-settled that a prisoner has no constitutional right to an  intra-prison grievance system and that the failure to investigate or respond to a prisoner's grievances is not actionable under 42 U.S.C. § 1983.  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)(finding no constitutional right violated by failure to process grievances). *See also Gardner v. Howard*, 109 F. 3d 427, 430

(8th Cir. 1997)(no § 1983 liability for violation of prison policy).

This is not a case where the Correctional Medical Services and Arkansas Department of Correction Defendants have placed Plaintiff in a "Catch 22" situation where he is unable to have his complaint heard about his medical care and his job assignment. To the contrary, Plaintiff has been regularly seen by medical staff for his hernia condition, but they have disagreed with his request for surgery. Mere disagreement with treatment decisions does not rise to the level of a constitutional violation. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995). *See also Smith v. Marcantonio*, 901 F.2d 500, 502 (8th Cir.1990)(holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir.1996). Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997).

The Arkansas Department of Correction defendants, in light of the regular medical care and assessment that he was receiving, were justified in relying upon the medical judgment of the medical care providers. There is no genuine issue of material fact concerning the issue of whether the Correctional Medical Services defendants have acted with deliberate indifference toward Plaintiff's hernia condition or whether the Arkansas Department of Correction defendants have required Plaintiff to work at tasks beyond his physical capacity. For all these reasons, the undersigned recommends that Plaintiff's claims against these Defendants be dismissed as well.

**Conclusion**

Accordingly,

IT IS THEREFORE RECOMMENDED that:

1)    Plaintiff's Complaint (docket entry #1) be DISMISSED WITH PREJUDICE.

2) Any pending motions be DENIED AS MOOT.

DATED this ___11___ day of December, 2007.

_____
UNITED STATES MAGISTRATE JUDGE